UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TRACEY SHURES and JOHN SHURES,               Case No. 09-10514

      Plaintiffs,                                  HONORABLE SEAN F. COX
v.                                           United States District Judge

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY, an Illinois
insurance company,

      Defendant.
_____/

OPINION & ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT [Doc. No. 8]

Plaintiffs Tracy and John Shures ("Plaintiffs") bring this cause of action for benefits

under the Michigan No-Fault Act against Defendant State Farm Mutual Automobile Insurance

Company ("State Farm"). The matter is currently before the Court on State Farm's Motion for

Summary Judgment [Doc. No. 8]. The parties have fully briefed the issues, and the Court

declines to hear oral argument pursuant to Local Rule 7.1(e)(2). For the reasons below, the

Court **GRANTS** State Farm's Motion for Summary Judgment [Doc. No. 8].

BACKGROUND

Plaintiffs' instant cause of action is related to a previous case before this Court: *John

Shures, by and through his guardian and his wife, Tracy Shures v. State Farm Mut. Auto. Ins.

Co.*, Case No. 04-72396. The parties in that action litigated that prior suit to a jury verdict of no

cause of action against the Plaintiffs on August 22, 2008 [*See* Jury Verdict Form, Doc. No. 133,

Case No. 04-72396].

In the prior lawsuit, Mr. Shures claimed he could not care for himself as a result of

1

injuries sustained in an automobile accident on January 2, 2000, and sought payment of $657.00 per day for 24-hour ($27.38 per hour) attendant care services. State Farm paid the requested amount until April 17, 2004, at which time they began tapering off Shures' benefits. The hourly rate benefits were eventually ended altogether when State Farm became aware that Shures' continued need for attendant care may not have been resultant from the accident.

The prior action was tried before this Court on August 18, 2008 and August 20 through 22, 2008. Shures sought a monetary judgment for unreimbursed attendant care services from April 18, 2004, the day State Farm began tapering off benefits, to August 22, 2008, the day of the jury verdict. At trial, Shures produced the expert testimony of at least five medical experts, all of whom testified that Shures' injuries were related to the January 2, 2000 auto accident. Defendants countered with evidence that Mr. Shures' impaired cognition and attendant care needs were unrelated to the January 2, 2000 motor vehicle accident, and instead stemmed from Mr. Shures' alcoholic encephalopathy and untreated diabetes.[1] The jury returned a verdict of no-cause for the Shures [*See* Jury Verdict Form, Doc. No. 133, Case No. 04-72396], and judgement was rendered by this Court on September 4, 2008 [*See* Doc. No. 134]. Specifically, the jury in the prior action specifically answered "no" to the following question:

QUESTION NO. 1:

Does the Plaintiffs' claim for attendant care from April 18, 2004 to the present arise out of the automobile accident of January 2, 2000?

[Def.'s Ex. 1, Doc. No. 8; *see also* Case No. 04-72396, Doc. No. 133]. No appeal was filed by the Plaintiffs in the prior action.

---

[1] Alcoholic encephalopathy is a condition in which the brain is damaged from excessive alcohol ingestion, causing a loss of brain function.

2

On February 11, 2009, the Plaintiffs filed their complaint in the instant action.  In this action, Plaintiffs allege that Mr. Shures has ongoing attendant care needs arising out of the January 2, 2000 accident.  Plaintiffs seek a monetary judgment for attendant care services from August 23, 2008, the day after the jury's no-cause verdict in the prior action, to the present.

On March 24, 2009, State Farm filed its Motion for Summary Judgment [Doc. No. 8], arguing that the jury verdict in the prior action bars the instant lawsuit under the doctrines of *res judicata* and collateral estoppel.

STANDARD OF REVIEW

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgement as a matter of law."  FED. R. CIV. P. 56(c).  The party seeking summary judgment has the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file together with the affidavits which it believes demonstrate the absence of a genuine issue of material fact.  *Celotex v. Catrett*, 477 U.S. 317, 323 (1986).  The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting FED. R. CIV. P. 56(e)).

ANALYSIS

State Farm argues that the Plaintiffs' claims in the instant lawsuit are barred by the doctrines of *res judicata* and collateral estoppel.  Because Mr. Shures could not have brought a no-fault claim for anticipated future attendant care services in the previous action, the Plaintiffs'

3

instant action is not barred by the doctrine of *res judicata*. However, as Plaintiffs are bound by the prior jury's verdict that Mr. Shures' injuries did not arise out of the January 2, 2000 accident, the Court finds the Plaintiffs' instant action barred by the doctrine of collateral estoppel, and therefore **GRANTS** State Farm's Motion for Summary Judgment [Doc. No. 8].

As the prior action between the parties was a diversity case applying Michigan law, the Court looks to Michigan's rules of claim and issue preclusion in evaluating State Farm's arguments in this motion. "For judgments in diversity cases, federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." *Taylor v. Sturgell*, 128 S.Ct. 2161, 2171, fn. 4, *quoting Semtek Int'l, Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 508 (2001).

I.   The Doctrine of *Res Judicata*, or Claim Preclusion, Does Not Bar Plaintiff's Action.

Under the doctrine of *res judicata*, or claim preclusion, "a final judgment forecloses successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." *Taylor v. Sturgell*, 128 S.Ct. at 2171 (internal quotation omitted). Under Michigan law:

> [t]he res judicata doctrine is applicable when (1) the prior action was decided on the merits, (2) both actions involve the same parties or their privies, and (3) the matter in the second case was, or could have been, resolved in the first.

*Adair v. State of Michigan*, 470 Mich. 105, 121 (2004). Michigan Courts "take a broad approach" to applying the doctrine of *res judicata*, holding that it bars "not only claims already litigated, but also every claim arising from the same transaction that the parties . . . could have raised but did not." *Id.*, *quoting Dart v. Dart*, 460 Mich. 573, 586 (1999).

State Farm argues that the Plaintiffs "litigated this threshold issue of whether allegedly-

rendered attendant care benefits arose out of Mr. Shures' motor vehicle accident.  The jury definitively found that the Plaintiffs could not meet their burden of establishing this fact." [Def.'s Br., Doc. No. 8, p.14].  As such, State Farm argues, "the principles of *res judicata* bar Plaintiffs from re-litigating this issue."  *Id.*

While State Farm is correct that the prior action was decided on the merits against Mr. Shures, and that "both actions involve[d] the same parties or their privies," *Adair*, 470 Mich. at 121, State Farm cannot meet the third of Michigan's three requirements for the application of *res judicata*.

Michigan's no-fault act, M.C.L. § 500.3101 *et seq.*, does not permit claimants to file an action for benefits "before they have become due under the act."  *Harris v. Mid-Century Health Ins. Co.*, 115 Mich. App. 591, 596 (1982).  Section 3145 of the act indicates that an action may be brought for benefits "payable" under the Act.  Personal protection insurance ("PIP") benefits, such as the attendant care service benefits at issue here, are "payable" as loss "accrues."  M.C.L. § 500.3142.  The act further provides that PIP benefits payable "accrue not when the injury occurs but as the allowable expense, work loss or survivor's loss is incurred."  M.C.L. § 500.3110(4).

In this case, Plaintiffs seek recovery of PIP benefits for attendant care services accruing from August 23, 2008 to the present.  Under M.C.L. § 500.3142, Plaintiffs could not have brought a claim for these benefits in the prior action, as these claimed benefits did not "accrue" until after the prior action's jury verdict.  As such, this action could not have been "resolved in the first [action]," *Adair*, 470 Mich. at 121, and the doctrine of *res judicata* does not bar Plaintiffs' claim in the instant action.

II.  <u>The Doctrine of Collateral Estoppel, or Issue Preclusion, Bars Plaintiff's Action</u>.

While Plaintiffs' *claims* in the instant action is not precluded by the prior action, certain *issues* related to Plaintiffs' current claims are so precluded.  The doctrine of collateral estoppel, or issue preclusion, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment," even if that issue recurs in the context of a different claim.  *Taylor v. Sturgell*, 128 S.Ct. at 2171, *quoting New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001).  Under Michigan law, the three elements of collateral estoppel are:

> (1) a question of fact essential to the judgment was actually litigated and determined by a valid and final judgment, (2) the same parties had a full and fair opportunity to litigate the issues, and (3) there was mutuality of estoppel.

*Estes v. Titus*, 481 Mich. 573, 585 (2008).

Under Michigan law, a plaintiff claiming PIP benefits from a no-fault insurance carrier must establish that the injuries for which those benefits are claimed "aris[e] out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle. . . ."  M.C.L. § 500.3105(1).  In the prior action, Mr. Shures claimed that his injuries, and attendant care services required due to those injuries, arose out of his automobile accident on January 2, 2000.  The jury found that Mr. Shures' injuries did not arise out of that accident, however, as evidenced by their jury verdict answering the following question in the negative:

> QUESTION NO. 1:
>
> Does the Plaintiffs' claim for attendant care from April 18, 2004 to the present arise out of the automobile accident of January 2, 2000?

[Def.'s Ex. 1, Doc. No. 8; *see also* Case No. 04-72396, Doc. No. 133].  As such, Plaintiffs are precluded from re-litigating the issue of whether Mr. Shures' injuries, the same injuries claimed

6

in the prior lawsuit, arose out of the January 2, 2000 accident.

        A.  <u>The "Arising" Issue Was Actually Litigated and Determined in the Prior</u>
          <u>Action by a Valid and Final Judgment</u>.

State Farm argues that the first prong of the *Estes* collateral estoppel analysis is met in

this case:

> [T]here is no question that all of the issues associated with Plaintiffs' claim that
> attendant care benefits allegedly rendered on Mr. Shures' behalf arose out of the
> January 2, 2000 motor vehicle accident were litigated and determined by a valid
> and final judgment in the prior lawsuit.

[Def.'s Br., Doc. No. 8, p.12].  In opposition, Plaintiffs argue that the issue of whether Mr.

Shures' claim for PIP benefits arose out of the January 2, 2000 accident was not decided in the

prior action.  In support for this assertion, however, Plaintiffs rely solely upon the fact that:

> . . .defendant argued at trial that other causes led to plaintiff John Shures requiring
> longer and more intensive attendant care than what was required for the injuries
> arising out of the motor vehicle accident.

[Pl.'s Br., Doc. No. 11, p.10].

Plaintiffs' argument in opposition is undone by the jury's verdict in the prior action: the

jury specifically found that Mr. Shures' need for attendant care did not arise from the January 2,

2000 automobile accident.  In this action, Plaintiffs rely upon the same cause - the January 2,

2000 accident - leading to the same type of claimed damages - attendant care services - as was

specifically denied in the prior action.

To prevail in this action, Plaintiffs will need to prove by a preponderance of the evidence

that Mr. Shures' need for attendant care arose from the January 2, 2000 accident.  Plaintiffs do

not bring forth any evidence that Mr. Shures' physical condition has changed since the prior

action, nor do they bring forth any evidence that Mr. Shures needs new or different attendant

care.  Indeed, the only difference between the instant suit and the prior suit is the dates for which

attendant care is sought to be reimbursed.

In summary, the jury in the prior action found that Mr. Shures' needs for attendant care

did not arise from the January 2, 2000 accident.  The jury's answer to Question One on the Jury

Verdict Form [Doc. No. 133, Case No. 04-72396] evidences that the "arising" issue was litigated

and determined in the prior action by a valid and final judgment.  As such, State Farm has met its

burden in satisfying the first prong of the *Estes* analysis for the application of collateral estoppel.

      B.  The Same Parties, or Their Privies, Had a Full and Fair Opportunity to
      Litigate    the "Arising" Issue in the Prior Action.

State Farm argues that the second prong of the *Estes* collateral estoppel analysis is met in

the instant case, as "this case involves precisely the same parties as were involved in the

previous lawsuit. . . ." [Def.'s Br., Doc. No. 8, p.12].  Plaintiffs dispute this statement, arguing as

follows:

> Tracey Shures was named in the Complaint for the first law suit only as a
> representative of John Shures, in that case the guardian to John Shures at the time
> the Complaint was filed.  However, as was made clear at the time of trial,
> pursuant to the evaluation filed by Owen Pearlman, MD dated 9-12-05 which was
> admitted as an exhibit at trial, the guardianship was terminated by the Ohio
> Probate Court long before the case proceeded to trial.

[Pl.'s Br., Doc. No. 11, p.7].  The Court further notes that, in the instant action, Tracy Shures is

named as a plaintiff herself, as opposed to her capacity as merely the guardian of John Shures in

the previous action.  Obviously, as the named plaintiff in the previous action, John Shures was a

"party" involved in the prior litigation.  The closer question is whether John's wife, Tracy,

should rightly be considered to have been a "party" to the prior action.

In the context of a collateral estoppel claim, Michigan courts have broadly defined who is

8

in privity with a party to a prior-litigated issue:

> In its broadest sense, privity has been defined as *mutual or successive relationships to the same right of property, or such an identification of interest of one person with another as to represent the same legal right*. This Court has also interpreted a privy as one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties. . . .

*Sloan v. City of Madison Heights*, 425 Mich. 288, 295-96 (1986) (internal citations and quotations omitted) (emphasis added). Interpreting *Sloan*, the Michigan Court of Appeals further elaborated upon the concept of privity:

> Privity between a party and a non-party requires both a "substantial identity of interests" and a "working or functional relationship. . . in which the interests of the non-party are presented and protected by the party in the litigation."

*Phinisee v. Rogers*, 229 Mich. App. 547, 553-54 (1988), quoting *Public Service Co. v. Osmose Wood Preserving, Inc.*, 813 P.2d 785, 787 (Colo. App. 1991).

In the prior action, under *Sloan* and *Phinisee*, Tracy Shures was in privity with her husband John's claims. Tracy Shures seeks the exact same payment of attendant care benefits - ostensibly in her role as John Shures' caretaker, rather than simply as his wife - and claims such damages on the exact same facts as did her husband in the prior action. As such, the claims by both John and Tracy Shures "represent the same legal right" as defined in *Sloan*.

Additionally, under *Phinisee*, the "functional relationship" of husband and wife - or, alternatively, as caretaker and patient - between John and Tracy Shures ensured that Tracy's interests were "presented and protected by the party in the litigation." Further, despite Tracy Shures' eventual removal as guardian for John, her status throughout most of the litigation as the representative through which John brought suit gave Tracy's interests further protection.

The instant case is factually similar to that of *Accident Victims Home Health Care v.*

9

*Allstate Ins. Co.*, 2006 WL 1540793, in which the Michigan Court of Appeals ruled that a PIP

benefits provider was collaterally estopped from arguing issues already decided in a previous

lawsuit between the insured and the no-fault insurance provider:

> . . . the precise issue Accident Victims seeks to litigate was fully litigated in the
> prior proceeding.  In the underlying case, Gaither sought PIP benefits for
> reasonable and necessary expenses related to her medical care from Accident
> Victims and other health care providers as a result of the motor vehicle accident.
> Allstate challenged the amounts claimed by Gaither because it argued, that they
> were not reasonably necessary or related to the accident.  Here, Accident Victims
> seeks payment for identical benefits Gaither claimed in the prior proceeding. . .
> *here, the interests of Gaither and Accident Victims are sufficiently similar so that
> the prior litigation afforded Accident Victims a forum to protect its rights under
> the no fault act.  Thus, for purposes of collateral estoppel, Gaither and Accident
> Victims were in privity.*

*Accident Victims Home Health Care*, 2006 WL 1540798, *3 (emphasis added).  As in *Accident

Victims*, here Tracy Shures was in privity with her husband John's claims for attendant care

services in the prior action.  As such, State Farm has met its burden in satisfying the second

prong of the *Estes* analysis for the application of collateral estoppel

       C.  <u>There Was Mutuality of Estoppel Regarding the "Arising" Issue in the Prior
          Action.</u>

     Finally, State Farm argues that the third and final prong of the *Estes* collateral estoppel

analysis is met in the instant case, as "there is no question that there would be mutuality of

estoppel" on the issue of whether John Shures' need for attendant care arose out of the January 2,

2000 automobile accident. [Def.'s Br., Doc. No. 8, p.12].  Plaintiffs make no argument in their

brief against the Court finding mutuality of estoppel.  Indeed, mutuality of estoppel exists "if one

taking advantage of the earlier adjudication would have been bound by it, had it gone against

him."  *Lichon v. American Universal Ins. Co.*, 435 Mich. 408, 427-28 (1990).

     Here, had John Shures been successful in the previous action, the jury would have

determined that his attendant care needs arose from the January 2, 2000 accident. This conclusion would have been binding on State Farm in future proceedings, and State Farm would be foreclosed from arguing in the instant case - absent evidence of changed circumstances - that John Shures' claims for attendant care benefits arose from the January 2, 2000 accident.

As all three elements under *Estes* are met in the instant case, the Court find both John and Tracy Shures collaterally estopped from arguing that John Shures' instant claims for attendant care benefits arose from the January 2, 2000 accident. Without the ability to claim that their claims for benefits "aros[e] out of the ownership, operation, maintenance or use of a motor vehicle as a motor vehicle" under M.C.L. § 500.3105(1), the Plaintiffs' claims in the instant action fail as a matter of law, and summary judgment is therefore proper.

CONCLUSION

For the reasons stated above, the Court **GRANTS** State Farm's Motion for Summary Judgment [Doc. No. 8].

**IT IS SO ORDERED**.

S/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: September 18, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 18, 2009, by electronic and/or ordinary mail.

S/Jennifer Hernandez
Case Manager